IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARK B. DEMERS,

                Plaintiff,

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

              Defendant.

Case No. 6:15-cv-02256-MA

OPINION AND ORDER

KATHERINE EITENMILLER
474 Willamette Street
Eugene, OR 97401

    Attorney for Plaintiff

BILLY J. WILLIAMS
United States Attorney
District of Oregon
JANICE E. HEBERT
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902

MARTHA A. BODEN
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900
Seattle, WA 98104

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Mark B. DeMers seeks judicial review of the final decision of the Commissioner of Social Security denying his application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-403, and his application for Supplemental Security Income ("SSI") disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, the decision of the Commissioner is affirmed.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff protectively filed his application for a period of disability and DIB benefits on February 10, 2012. On March 14, 2014, Plaintiff protectively filed his application for SSI. In both applications, Plaintiff alleges disability beginning June 10, 2011, due to depression, short-term memory loss, muscle weakness, cognitive difficulties, and tremors. Tr. Soc. Sec. Admin. R. ("Tr.") at 18 & 95, ECF No. 9. Plaintiff's claims were denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). The ALJ held a hearing on July 29, 2014, at which Plaintiff appeared with his attorney and testified. A vocational expert, Jeffrey F. Tittelfitz, also appeared at the hearing and testified. On September 5, 2014, the ALJ issued an unfavorable decision. The Appeals Council denied Plaintiff's request for review, and therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

Plaintiff was born in 1957, and was 53 years old on the alleged onset of disability date and 56 on the date of the hearing. Plaintiff has earned a GED, and has past relevant work as a bus driver, a delivery driver, and inventory stock clerk. Tr. 31, 86.

# THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *See Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

The ALJ found that Plaintiff meets the insured status requirements through December 31, 2016. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged onset of disability. At step two, the ALJ found that Plaintiff had the following severe impairments: depression, anxiety, alcohol abuse, and cannabis abuse. At step three, the ALJ found that Plaintiff's impairments, or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed Plaintiff with a residual functional capacity ("RFC") to perform a full range of work at all exertional levels with additional limitations: Plaintiff is able to "understand, remember and carry out only simple, routine, repetitive tasks and he can tolerate no more than occasional interaction with supervisors, coworkers and the public." Tr. 23.

At step four, the ALJ found that Plaintiff is able to perform his past relevant work as a delivery driver. Tr. 31. The ALJ made alternative findings at step five, determining that considering Plaintiff's age, education, work experience, and residual functional capacity, other jobs exist in significant numbers in the national economy that Plaintiff can perform, including such

representative occupations as: janitor, hand packager, and floor attendant. Accordingly, the ALJ concluded that Plaintiff has not been under a disability under the Social Security Act from June 10, 2011, through the date of the decision.

## ISSUES ON REVIEW

On appeal to this court, Plaintiff contends the following errors were committed: (1) the ALJ improperly evaluated his testimony; (2) the ALJ improperly evaluated the opinions of examining psychologist Charlotte Higgins-Lee, Ph.D, treating psychiatrist Scott Mendelson, M.D., and counselor Tonya Hall, LCSW; (3) the ALJ improperly evaluated the lay testimony of his wife Barbara DeMers; and (4) the RFC fails to incorporate all his limitations. The Commissioner argues that the ALJ's decision is supported by substantial evidence and is free of legal error. Alternatively, the Commissioner contends that even if the ALJ erred, Plaintiff has not demonstrated harmful error.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (internal quotations omitted); *Valentine*, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014); *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the

Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001); *Garrison*, 759 F.3d at 1010.

## DISCUSSION

**I.     Plaintiff's Credibility**

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. 20 C.F.R. § 404.1529. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in testimony.[1] *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039.

---

[1] As the Commissioner correctly indicates, Social Security Ruling ("SSR") 16-3p eliminated the use of the term "credibility." However, SSR 16-3p became effective March 28, 2016. I have previously determined that SSR 16-3p does not apply retroactively because 42

5 - OPINION AND ORDER

At the hearing, Plaintiff testified that he became unable to work in June 2011 due to tremors, weakness on his left side, confusion and emotional lability. Tr. 47-48. Plaintiff stated that he was placed on short term disability until March 2012. Tr. 49, 51. Plaintiff testified that he attempted to return to work on a part-time basis, but was unable to do so, then his job was eliminated by his employer. Tr. 53-54. Plaintiff testified that alcohol did not become an issue until June 2012 when his brother committed suicide. Tr. 55-56. Plaintiff stated that his wife left him in January 2013. Tr. 56. Plaintiff testified that he is in recovery for alcoholism, and has been sober for 69 days. Tr. 56.

Plaintiff testified that his cognitive issues prevent him from working, and that he has difficulty with his short term memory. Tr. 56. Plaintiff keeps a daily journal. Plaintiff attends counseling every week and has a support network through his church. Tr. 57. Plaintiff stated that he lives in clean and sober housing he obtained through the Veterans Administration. Tr. 59. Plaintiff stated that he can walk to church, appointments, shopping, and to Alcoholics Anonymous meetings three times per week. Tr. 61.

Plaintiff testified that in a typical day, he gets up, drinks coffee, writes in his journal, reads the Bible, eats a healthy breakfast, and walks to see his brother. Tr. 62. Plaintiff stated that he is tired in the afternoon and takes a nap. In the evening, Plaintiff testified that he typically watches a

---

U.S.C. § 405(g) does not contain any express authorization from Congress allowing the Commissioner to engage in retroactive rulemaking. *Smith v. Colvin*, No. 6:15-cv-01625-MA, 2017 WL 388814, at *4 n.2 (D. Or. Jan. 27, 2017). *See, e.g., Wright v. Colvin*, No. 15-cv-02495-BLF, 2017 WL 697542, *9 (N.D. Cal. Feb. 22, 2017) (holding SSR 16-3p does not apply retroactively); *Thayer v. Colvin*, No. 2:16-cv-00545-DWC, 2017 WL 132450, at *7 (W.D. Wash. Jan. 13, 2017) (same). I adhere to that rationale here. Therefore, because the ALJ's decision in this case was issued September 5, 2014 – well before the effective date – SSR 16-3p does not apply in this instance.

movie. Tr. 63. Plaintiff testified that he reads all the information that his counselor Ms. Hall provides him. Tr. 63.

Plaintiff testified that he takes Cymbalta for depression, omeprazol for acid reflux, and terazosin for blood pressure. Tr. 65. Plaintiff stated that he did not believe he could lift 50 pounds and be on his feet for six or eight hours a day because he would get tired. Tr. 66. Plaintiff stated that he worked with his brother cutting Christmas trees for one day, but had to stop after four hours because it was too physically demanding. Tr. 67. Plaintiff testified that he is unable to work full time. Tr. 81. Plaintiff testified that three or four days each week, he does not leave his house due to depression and because he has nothing scheduled. Tr. 78. Plaintiff expressed interest in a working a job for 15 hours a week involving typing. Tr. 79. Plaintiff stated that he gets panic attacks two or three times in a month. Tr. 80.

In an April 29, 2012 Function Report - Adult, Plaintiff indicated he will lift weights for an hour, then eat breakfast. Plaintiff reported attending events for his grandson, or attending a men's church group in the evenings, or watching television with his wife. Tr. 241. Plaintiff reported no difficulties with self care, is able to prepare meals, enjoys planting flowers, but can sometimes forget what he is doing. Tr. 243. Plaintiff indicated he walks a mile two to three times a week, and goes out three to four times each week. Plaintiff noted he gets agitated in public. Tr. 243. Plaintiff reported his wife pays the bills because he gets confused. Tr. 244.

Plaintiff expressed difficulty with lifting, standing, walking, talking, hearing, stair climbing, memory, concentration, completing tasks, understanding, following instructions, and getting along with others. Tr. 245. Plaintiff indicated he has trouble finishing what he has started, and has difficulty with authority figures. Tr. 245.

7 - OPINION AND ORDER

In the decision, the ALJ offered several specific, clear, and convincing reasons for discounting Plaintiff's testimony. *Brown-Hunter*, 806 F.3d at 488-89. First, the ALJ discounted Plaintiff's testimony based on his inconsistent and unreliable reports about his alcohol consumption. A claimant's inconsistent reports can be a clear and convincing reason to discredit a claimant. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006) ("[C]onflicting or inconsistent testimony concerning alcohol use can contribute to an adverse credibility finding[.]"); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir.2002) (upholding an adverse credibility finding where a claimant made inconsistent statements to her doctors about her alcohol and drug use). Here, the ALJ detailed that Plaintiff testified he did not start drinking until June 2012, and did not start drinking excessively until his brother's suicide in October 2012. Tr. 29. As the ALJ accurately found, Plaintiff's statements are contradicted by his reports to addiction counselors that he began drinking much earlier – in 2010 or 2011, even as early as 2008. Tr. 29, 924, 1012. Indeed, Plaintiff's allegation that his initial relapse into alcohol was caused by his brother's suicide is undermined by Plaintiff's statements to Dr. Turner, Plaintiff's treating psychiatrist while in inpatient alcohol rehabilitation. Plaintiff reported to Dr. Turner in February 2013 that he began drinking five years prior – well before his allegedly disabling symptoms. Tr. 923-24. And, as the ALJ correctly found, Plaintiff repeatedly denied consuming alcohol to evaluators and primary health care providers when seeking care for his allegedly disabling symptoms in 2011 and 2012. Tr. 426, 470, 496, 525, 534, 543, 624, 1151. The ALJ found Plaintiff's lack of truthfulness to his providers about his relapses compromised his credibility. The ALJ's findings are readily supported by substantial evidence in the record, and the ALJ could reasonably find the inconsistencies in Plaintiff's reporting detracted from his credibility. *Molina*, 674 F.3d at 1111.

Second, the ALJ detailed numerous inconsistencies between Plaintiff's activities and his alleged limitations. An ALJ may consider inconsistent statements concerning symptoms and "other testimony by [Plaintiff] that appears less than candid in weighing Plaintiff's credibility." *Tommasetti*, 533 F.3d at 1039. The ALJ indicated that Plaintiff asserted his inability to get along with others is a significant obstacle to work. Tr. 29. The ALJ found Plaintiff's allegation of severe problems with social functioning undermined by his ability to attend group counseling sessions, alcoholic anonymous meetings, church services, and maintain a close relationship with his family. Tr. 29. There is little indication in this very lengthy record that Plaintiff has difficulties getting along with others. As the ALJ correctly found, Plaintiff regularly attended a men's church group, maintains a close support network of friends and family, and as the ALJ noted, generally interacted appropriately with providers, and frequently participated in group counseling sessions. Tr. 925, 980, 1152, 1324-25. The ALJ findings are wholly supported by substantial evidence.

The ALJ similarly found that Plaintiff's alleged inability to sustain concentration and focus was undermined by his activities. The ALJ detailed that contrary to Plaintiff's alleged limitations, he reported spending a great deal of time reading materials provided to him through counseling, and that he was able to learn computer programming quickly. Tr. 1192. Additionally, the ALJ found his alleged inability to focus and concentrate undermined by his report that he reads the Bible daily, and writes in a journal daily for extended periods. Tr. 62-63. The ALJ also found that Plaintiff's allegation of severe fatigue undermined by Plaintiff's admitted ability to walk for miles each day without the need to stop and rest. Tr. 60-62. Again, the ALJ's findings are readily supported by substantial evidence in the record and, combined with Plaintiff's inconsistent reporting about his

alcohol consumption, provide clear and convincing support for the ALJ's adverse credibility determination. *Molina,* 674 F.3d at 1113. The ALJ did not err.

Third, the ALJ detailed that Plaintiff's allegations were not supported by the objective medical record. The lack of objective medical evidence to support a claimant's allegations can be a clear and convincing reason to discredit a claimant, so long as it is not the only reason. *Burch v. Barnhart,* 400 F.3d 676, 680-81 (9th Cir. 2005). In the decision, the ALJ detailed that Plaintiff complained of a constellation of neurologic symptoms, including difficulty reading, left side pressure in his head, short-term memory loss, right hand tremor, dizziness, dramatic mood swings, and emotional lability. Tr. 24, 29. The ALJ thoroughly examined all the medical evidence and testing. Tr. 24-28. The ALJ detailed that despite numerous comprehensive work-ups, Plaintiff's mental-status examinations were unremarkable but for "flat/blunted affect and some depressed/anxious moods." Tr. 29. To be sure, despite Plaintiff's insistence of some significant neurologic process, numerous providers ruled out multiple sclerosis, Parkinson's, lupus, and lyme disease as potential causes of his symptoms. Tr. 29-31, 471, 499, 525, 1153. As the ALJ discussed, Plaintiff's providers indicated that his presentation at times was inconsistent with his description of symptoms. Tr. 618, 1153. The ALJ's determination that the objective medical record does not support the severity of Plaintiff's alleged symptoms is wholly supported by substantial evidence, and lends additional clear and convincing support to the ALJ's adverse credibility determination.

Lastly, the ALJ found that Plaintiff was not always compliant with medications, repeatedly relapsed into alcohol abuse, and tried to hide his behavior, all actions that undermined his credibility. It is well-established that unexplained non-compliance with treatment reflects on a claimant's credibility. *Molina,* 674 F.3d 1113-14; *Tommasetti,* 533 F.3d at 1039. The ALJ's findings are

clearly supported by the record. As the ALJ correctly noted, Plaintiff stopped taking his Cymbalta for his depression, choosing instead to drink, despite acknowledging that the medication was helpful. Tr. 469, 1057. And, as the ALJ indicated, the record also reveals numerous relapses and two DUIs during the period at issue. Tr. 1002, 1169, 1171, 1324. For example, shortly after being admitted to inpatient rehabilitation, Plaintiff left the grounds, consumed alcohol and marijuana, and returned the following day accompanied by his twin brother. Tr. 1066, 1118. Substantial evidence amply supports the ALJ's findings and further bolsters the ALJ's negative credibility assessment.

In summary, the ALJ has provided specific, clear and convincing reasons backed by substantial evidence in the record as a whole to support the adverse credibility determination. Accordingly, the ALJ did not err.

## II. The ALJ Did Not Err in Evaluating the Medical Evidence

### A. Standards

In general, the opinion of a treating physician is given more weight than the opinion of an examining physician, and the opinion of an examining physician is afforded more weight than the opinion of a nonexamining physician. *Ghanim*, 763 F.3d at 1160; *Garrison*, 759 F.3d at 1012; *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Orn*, 495 F.3d at 631 (internal quotations omitted) (alterations in original); 20 C.F.R. §§ 404.1527(c), 416.927(c). To reject the uncontradicted opinion of a treating physician, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

If the treating physician's opinion is contradicted, the ALJ must consider how much weight it is entitled to considering the factors in 20 C.F.R. § 404.1527(c)(2-6). The factors include the length of the treatment relationship, the frequency of examination, the nature and supportability of the opinion, and its consistency with other evidence in the record as a whole. 20 C.F.R. § 404.1527(d)(2-6); *Ghanim*, 763 F.3d at 1161. If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Ghanim*, 763 F.3d at 1161. However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957.

B.     *The ALJ Did Not Err in Discounting Dr. Higgins-Lee's Opinion*

Plaintiff argues that the ALJ erred in failing to consider or assign weight to Dr. Higgins-Lee's opinion that Plaintiff suffers from cognitive impairment in verbal processing abilities. Pl.'s Br. 12, ECF No. 14. Plaintiff argues that the ALJ erred in finding Dr. Higgins-Lee's diagnosis of cognitive impairment "not severe" at step two and failed to properly consider his cognitive impairments when formulating his RFC. The court disagrees.

Dr. Higgins-Lee performed a comprehensive neuropsychological evaluation with testing covering two days, October 11 and 15, 2011, and additional testing on October 29, 2011. Tr. 453. Dr. Higgins-Lee conducted an extensive interview, including a discussion of Plaintiff's medical and psychological problems, history of alcoholism, and mental status examination. Tr. 452-54. Dr. Higgins-Lee conducted numerous tests, including WAIS-IV, Wechsler Memory Scale-III, Woodcock Johnson III Tests of Achievement, Boston Naming Test, Stroop Word and Color Test, Trails A & B, and Personality Assessment Inventory, among others. Tr. 452. Dr. Higgins-Lee noted that

12 - OPINION AND ORDER

Plaintiff's clinical scales for anxiety and depression were very elevated, and there were no indications of alcohol or drug use. Tr. 454. Dr. Higgins-Lee indicated that Plaintiff was alert and oriented throughout the interview and testing, and that testing revealed average sustained attention and concentration. Tr. 454. However, on story recall, Plaintiff became flushed, dizzy, and could not concentrate. Tr. 454-55. Dr. Higgins-Lee noted Plaintiff's scores on timed tests were consistently low, and that Plaintiff indicated he was experiencing some specific fears and anxiety. Tr. 457. Dr. Higgins-Lee diagnosed cognitive impairment NOS (processing speed - verbal memory), major depression, and generalized anxiety disorder. Tr. 459.

To the extent that Plaintiff challenges the ALJ's finding that his cognitive impairment is "not severe" at step two, even assuming *arguendo* that the ALJ erred, the error would be harmless, a point Plaintiff concedes in his briefing. *See* Pl.'s Br. 13, n.2, ECF No. 13. The ALJ resolved step two in Plaintiff's favor, continuing with the sequential analysis, and the ALJ considered Plaintiff's alleged cognitive deficits when fashioning the RFC. *Burch*, 400 F.3d at 682; *see also Gray v. Comm'r Soc. Sec. Admin.*, 365 F. App'x 60, 61 (9th Cir. 2010) (rejecting argument that the ALJ erred at step two by determining certain impairments were nonsevere, because any alleged error was harmless since "the ALJ concluded that [claimant's] other medical problems were severe impairments").

The court rejects Plaintiff's contention that the ALJ erred in failing to assign specific weight to Dr. Higgins-Lee's opinion in the decision. Dr. Higgins-Lee's opinion and diagnosis of cognitive impairment was contradicted by the several other opinions of record, therefore, the ALJ was required to provide specific and legitimate reasons for discounting it, backed by substantial evidence.[2] An

---

[2] Dr. Higgins-Lee's opinion that Plaintiff has a cognitive impairment diagnosis is contradicted by Drs. Boggs, Gibbs, Olander, and Madden.

ALJ satisfies the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (internal quotations omitted). "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors, are correct." *Id.* The ALJ's reasoning readily meets this standard.

Contrary to Plaintiff's assertion, the ALJ thoroughly discussed Dr. Higgins-Lee's evaluation at step two, as well as in the discussion of the medical evidence when assessing Plaintiff's RFC. Tr. 21, 25. At step two, the ALJ set out a detailed summary of Dr. Higgins-Lee's cognitive impairment diagnosis, the ALJ offered his own interpretation of the evidence, and provided a host of reasons for discounting Dr. Higgins-Lee's opinion and diagnosis:

> this diagnosis is inconsistent with the totality of the objective findings. No treating source identified [Plaintiff] as having a cognitive disorder, instead attributing any mild to moderate cognitive deficits as symptoms of depression/anxiety. This explanation seems more consistent with the documented longitudinal history, [Plaintiff's] reports that he had no such problems prior to the alleged onset date, and the lack of an intervening event (such as a head injury) to explain the development of such deficits.

Inconsistency with the medical record as a whole is a specific and legitimate basis for discounting a physician's opinion. *Orn*, 495 F.3d at 631 (consistency with the record as a whole is a valid factor to consider when weighing medical opinions). As the ALJ discussed when evaluating the medical evidence, Dr. Gibbs conducted a independent work-up, screened Plaintiff for cognitive impairment, and his treatment notes reflect Plaintiff scored a 29/30 on the Mini-Mental State Examination, indicating normal cognition. Tr. 473-74. Contrary to Dr. Higgins-Lee, Dr. Gibbs opined that severe depression "is the core of [Plaintiff's] problems." Tr. 24, 469-71. Similarly, the ALJ noted Dr. Boggs conducted numerous diagnostic tests to rule out a neurologic disorder to

explain Plaintiff's symptoms, but concluded Plaintiff has an "emotional disorder of a depressive/anxiety nature." Tr. 24, 425-26. The ALJ also discussed that due to the lack of a neurologic explanation for Plaintiff's symptoms and a positive ANA marker, Plaintiff was referred to William Hinz, M.D., a rheumatologist for further evaluation. Tr. 25, 494. Dr. Hinz could find no signs of a connective tissue disorder and concluded the primary issue was neuropsychiatric, and recommended SSRI (antidepressant) therapy. Tr. 25, 499. Based on the lack of objective evidence in the record, the ALJ reasonably found Dr. Higgins-Lee's diagnosis of cognitive impairment inconsistent with the totality of other medical opinions.

Additionally, as the ALJ accurately found, none of Plaintiff's treating providers progress notes carry a diagnosis of cognitive impairment. *See, e.g.,* Tr. 524, 562, 613. Indeed, Terrence Bancroft, P.A., Plaintiff's treating provider from January to July 2012, did not include any type of cognitive limitation in his diagnoses or problem list. *See, e.g.,* Tr. 524, 531, 562. Likewise, treatment notes from Scott Mendelson, M.D., Plaintiff's treating psychiatrist at the Veterans Administration, do not include any type cognitive disorder diagnosis. *See, e.g.,* Tr. 613, 640, 1178. The ALJ's reasoning is wholly supported by substantial evidence. Therefore, the inconsistency with the other objective evidence in the record clearly provides a specific and legitimate basis for giving Dr. Higgins-Lee's diagnosis and opinion less weight. The ALJ did not err in evaluating the opinion Dr. Higgins-Lee.

B.    *Scott Mendelson, M.D. and Tonya Hall, LCSW*

Plaintiff complains that the ALJ failed to provide specific and legitimate reasons for discounting the August 12, 2014 opinion of Dr. Mendelson and Tonya Hall, LCSW. After the hearing, but before the ALJ issued the decision, Dr. Mendelson and Ms. Hall prepared Mental

Residual Functional Capacity Form ("MRFC"), in which they opined that Plaintiff has several marked limitations and several moderate limitations. Tr. 1396-99. On the check-the-box MRFC form, "moderate" limitations are defined as those which seriously interfere with "the individual's ability to perform the designated activity on a regular and sustained basis." Tr. 1396. The MRFC form defines "marked" limitations as those which "preclude[] the ability to perform the designated activity on a regular and sustained basis." Tr. 1396. As the ALJ correctly indicated, Dr. Mendelson and Ms. Hall opined that Plaintiff was moderately limited in his ability to remember locations and work-like procedures, maintain attention and concentration for extended periods, perform activities within a schedule, sustain an ordinary routine without special supervision, work in proximity to others without being distracted, make simple work-related decisions, interact appropriately with the public, respond appropriately to criticism from supervisors, respond appropriately to changes in the work place, take appropriate precautions around hazards, and set realistic goals. Tr. 1397-99. Dr. Mendelson and Ms. Hall opined that Plaintiff would be markedly limited in his ability to understand, remember, and carry out detailed instructions, complete a normal work day and work week without interruptions from psychologically based symptoms without an unreasonable amount of rest periods, and travel to unfamiliar places or use public transportation. Tr. 1397-99.

In the decision, the ALJ gave Dr. Mendelson and Ms. Hall's opinion "some weight" because they failed to identify Plaintiff's diagnoses and or offer any clinical diagnoses to support the check-the-box MRFC. Tr. 28. An ALJ may reject check-the-box forms that are inadequately explained. *Molina*, 674 F.3d at 1111; *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996). As the ALJ aptly concluded, the check the box form contains no information, clinical findings, or explanation for the boxes checked, limitations assessed, or diagnoses to support the assessed limitations. Thus, the ALJ

16 - OPINION AND ORDER

could reasonably discount the Dr. Mendelson and Ms. Hall's MRFC opinion because it lacked an adequate explanation to support the conclusions contained therein. This is a specific and legitimate reason for discounting the limitations assessed in the MRFC.

Additionally, the ALJ noted the limitations on the MRFC were inconsistent with degree of restriction identified in Dr. Mendelson's treatment notes. Tr. 30. Inconsistency between a physician's treatment notes and his opinion is a specific and legitimate basis to discount that opinion. *Ghanim*, 763 F.3d at 1161; *Tommasetti*, 533 F.3d at 1041. As the ALJ discussed, Dr. Mendelson's progress notes reflect that Plaintiff reported a range of symptoms beginning in June 2011 such as difficulty with mood lability, impulse control, anger, and that Plaintiff reported improvement of these symptoms with Cymbalta. Tr. 26, 638. Additionally, the ALJ discussed that Dr. Mendelson's notes reflect that Plaintiff continued to complain of fatigue and shortness of breath and that neuropsychological testing failed to reveal any cognitive dysfunction. Tr. 638. As the ALJ accurately indicated, Plaintiff's presentation was often odd with his alleged deficits, and that his speech, psychomotor activity and demeanor were normal. Tr. 618, 638, 1324-25. To be sure, Dr. Mendelson's treatment notes do not reflect marked limitations in Plaintiff's ability to travel to unfamiliar places or use public transportation, which is contrary to the limitations assessed in the MRFC.

The court is not persuaded by Plaintiff's contention that the ALJ failed to account for Dr. Mendelson and Ms. Hall's assessed moderate limitations in Plaintiff's ability to interact with supervisors. According to Plaintiff, this limitation fails to account for his "angry outbursts." *See* Pl.'s Br. 15, ECF No. 14. The ALJ thoroughly discussed the occasional references to angry outbursts and inappropriate interactions contained in the record, and limited Plaintiff to no more than

occasional interaction with supervisors, coworkers, and the public in the RFC. Tr. 29-31. As the ALJ referenced, notations to "angry outbursts" and disrespectful behavior occurred during Plaintiff's inpatient rehabilitation after Plaintiff left the premises on a weekend pass and consumed alcohol, returned late from a second pass, and he ultimately was discharged from the program. Tr. 1066-67. Rehabilitation staff indicated that Plaintiff seemed to have difficulty with the rules and committing to the program. Tr. 1067. And, as the ALJ correctly indicated, the remaining complaints of anger management and irritability stemmed from Plaintiff's wife. Tr. 30, 254, 425, 540. The ALJ determined that "the social limits included in the RFC accommodate claimant's belligerent style of interaction when drinking." Tr. 31. The ALJ's findings are wholly supported by substantial evidence. Even if the record could support the conclusion that Plaintiff suggests, the ALJ's findings are supported by reasonable inferences drawn from the record and will not be disturbed. *Molina*, 674 F.3d at 1111.

Having reviewed Dr. Mendelson's treatment notes, I conclude the ALJ could reasonably find them inconsistent with the severity of the limitations assessed in the MRFC, and provides a specific and legitimate basis for partially discounting the limitations assessed in the MRFC. *Tommassetti*, 533 F.3d at 1041.

## III.   The ALJ Did Not Err in Discounting Lay Testimony of Plaintiff's Wife

Lay witness testimony as to how a claimant's symptoms affect his ability to work is competent evidence, which the ALJ must take into account. *Molina*, 674 F.3d at 1114; *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ is required to account for competent lay witness testimony, and if it is rejected, provide germane reasons for doing so. *Valentine*, 574 F.3d at 694.

In an April 30, 2012 third party Function Report, Plaintiff's wife, Barbara DeMers noted that she spends six hours each day with Plaintiff. Ms. DeMers indicated that Plaintiff has trouble remembering what he is supposed to do. She described that Plaintiff wakes up in the morning and writes in his journal and does his reading. She noted Plaintiff does not have any difficulty with self care, and can prepare his own breakfast and lunch. Tr. 249-50. Ms. DeMers indicated that Plaintiff can load and unload the dishwasher, folds laundry, and waters the grass. She noted that Plaintiff typically goes shopping with his brother, and can forget where he is going. Tr. 250.

Ms. DeMers indicated that Plaintiff cannot pay the bills because he cannot remember who to pay and gets confused. Tr. 251. She reported that it can take all day for Plaintiff to write in his journal because he has difficulty concentrating. Ms. DeMers also indicated that Plaintiff attends men's group at church once a week and counseling once a week. Tr. 252. She also noted that Plaintiff gets disoriented in large public spaces and is not comfortable in crowds. Tr. 252. Ms. DeMers noted that Plaintiff has difficulty tracking conversations, cannot follow instructions and gets frustrated. Tr. 253. She estimated that Plaintiff can walk one mile before needing to rest for 15 minutes.

The ALJ provided several reasons germane to Ms. DeMers for discounting her testimony. First, the ALJ noted that Ms. DeMers' testimony parroted the allegations of Plaintiff, which the ALJ rejected. Here, Ms. DeMers described that Plaintiff is unable to follow simple directions, suffers short term memory loss, and has difficulty concentrating, allegations akin to those asserted by Plaintiff. Tr. 248-29. As discussed at length above, the ALJ appropriately discounted Plaintiff's similar subjective complaints. Therefore, the ALJ has provided a germane reason for rejecting Ms. DeMers' comparable testimony. *Molina*, 674 F.3d at 1114; *Valentine*, 574 F.3d at 694.

Second, the ALJ found Ms. DeMers' testimony inconsistent with the medical evidence of record. Inconsistency with the medical record can be a germane reason for discounting lay testimony. *Bayliss*, 427 F.3d at 1218 (conflicts with the medical evidence a germane reason to discount lay testimony). But, the ALJ may not discredit lay testimony because it is not corroborated by medical evidence. As the ALJ accurately found, contrary to Ms. DeMers' statement that Plaintiff is unable to follow simple instructions, repeated mental status examinations show that Plaintiff is capable of following one to two step commands without difficulty. Tr. 473, 595-96, 624-26, 1152. The ALJ's reasoning is backed by substantial evidence, and therefore provides another reason germane to Ms. DeMers for discounting her testimony.

Third, the ALJ found that Ms. DeMers' allegations of Plaintiff's limitations were inconsistent with his abilities and activities. For example, the ALJ noted that Ms. DeMers indicated that plaintiff had difficulty comprehending new information, yet Plaintiff admitted he learned computer programming quickly. Again, the ALJ findings are readily supported by substantial evidence and the ALJ could reasonably discredit Ms. DeMers on this basis. Accordingly, the ALJ has provided multiple germane reasons germane to Ms. DeMers for discounting her testimony; the ALJ did not err.

## IV. RFC Adequately Accounted for Any Alleged Cognitive Deficits or Problems with Pace

Plaintiff asserts that the ALJ's RFC assessment restricting him to "simple" work improperly accounted for his alleged cognitive deficits. Pl.'s Opening Br. 14, Pl.'s Reply Br. 2-3. At step three, the ALJ's found that Plaintiff has "moderate" limitations in concentration, persistence, and pace. Tr. 22. The ALJ's RFC assessment represents all of a claimant's work-related limitations, including non-severe limitations. 20 C.F.R. §§ 404.1545(a)(1-2); 416.945(a)(1-2). An RFC restricting a

claimant to "simple" tasks, if based upon the record, may be consistent with a moderate or mild limitation in concentration, persistence, and pace. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008).

Plaintiff relies on previous findings by courts in this district addressing moderate or mild limitations in concentration, persistence, and pace and an RFC restricting a claimant to "simple" work. This court has found that such a work restriction alone, without further explanation by the ALJ, does not adequately capture a "moderate" limitation in concentration, persistence, and pace. *See Lee v. Colvin*, 80 F.Supp.3d 1137, 1150-51 (D. Or. 2015) (concluding that moderate limitation in concentration, persistence, and pace was not addressed by ALJ, included in RFC or hypotheticals to vocational expert); *Brink v. Comm'r Soc. Sec. Admin.*, 343 Fed. App'x 211, 212 (9th Cir. 2009) (finding the ALJ erred by accepting that claimant had limitations as to concentration, persistence, or pace but failing to include such limitations in the RFC and hypothetical questions to vocational expert). The court finds these cases distinguishable.

On July 19, 2012, Dorothy Anderson, Ph.D., a reviewing psychologist for Disability Determination Services ("DDS"), found that Plaintiff has "moderate" restrictions in concentration, persistence, and pace in the psychiatric review technique utilized for assessing the "B" criteria for psychological impairments. Tr. 106. However, later in the more detailed assessment of Plaintiff's residual functional capacity, Dr. Anderson specifically opined that Plaintiff was not significantly limited in his ability to understand, remember and carry out short and simple instructions. Tr. 105. Additionally, Dr. Anderson opined that Plaintiff can "carry out and maintain" concentration, persistence, and pace for one to two step tasks, but is unable to do so for more complex tasks due to his depressive symptoms. Tr. 106. On reconsideration, Robert Henry, Ph.D., another reviewing

psychologist for DDS, likewise found Plaintiff had moderate limitations with concentration persistence and pace for the "B" critera. Tr. 121. Similarly, Dr. Henry provided additional detail when assessing Plaintiff's RFC, opining that Plaintiff is not significantly limited in understanding, remembering or carrying out short and simple instructions, and that Plaintiff is able to sustain and maintain sufficient concentration, persistence and pace for 1-2 step tasks. Tr. 123-24. The ALJ gave great weight to Drs. Anderson and Henry's opinions. Tr. 30.

In contrast, as discussed at length above, the ALJ properly rejected Dr. Higgins-Lee's diagnosis of cognitive disorder at step two, properly rejected concentration, persistence, and pace limitations assessed by Dr. Mendelson, properly discounted Plaintiff's testimony concerning his alleged cognitive difficulties, trouble concentrating, and lack of focus, and rejected similar allegations from the lay witness. The ALJ found that Plaintiff's alleged difficulty following simple instructions was undermined by repeated mental status examinations showing him capable of performing one to two step commands without difficulty and attributed Plaintiff's alleged cognitive limitations to his depression and anxiety.

In *Stubbs-Danielson*, the Ninth Circuit held that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Id.* at 1174. Here, the ALJ accepted medical testimony from Drs. Anderson and Henry, and rejected the cognitive limitations assessed by Dr. Higgins-Lee, Dr. Mendelson, and Plaintiff's similar subjective complaints. The cases cited by Plaintiff caution only that an ALJ must explain how a "simple" work restriction adequately captures a "moderate" limitation in concentration, persistence and pace. Here the ALJ

gave such an explanation. The ALJ's RFC limiting Plaintiff to simple, routine, repetitive tasks adequately captures his "moderate" limitations with concentration persistence and pace.

Therefore, unlike *Lee* and *Brink* and akin to *Stubbs-Danielson*, the accepted medical testimony reflects that Plaintiff would have moderate limitations with detailed tasks, but he is not significantly limited in his ability to carry out and maintain concentration, persistence, and pace for simple, routine, and repetitive tasks. Tr. 106. Thus, the RFC adequately reflects the accepted medical testimony, is supported by substantial evidence in the record as a whole, and therefore, the ALJ did not err. *Stubbs-Danielson*, 539 F.3d at 1174; *see also Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (ALJ did not err where RFC adequately accounted for limitations on detailed tasks); *Mitchell v. Colvin*, 642 F.App'x 731, 732-33 (9th Cir. 2016) (moderate limitations in concentration, persistence and pace adequately captured in RFC limiting claimant to simple work); *Hartman v. Astrue*, Case No. 3:10-cv-06305-ST, 2011 WL 7452802, *8-9 (D. Or. Dec. 2, 2011) (same).

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision denying benefits to Plaintiff is AFFIRMED. This action is DISMISSED.

IT IS SO ORDERED.

DATED this _16_ day of MAY, 2017.

Malcolm F. Marsh
United States District Judge